UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

           Plaintiff.

v.

Teofil Gherasim,

           Defendant.
_____/

Case: 2:21−cr−20641
Assigned To : Michelson, Laurie J.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 10/18/2021
Description: INFO USA V. GHERASIM (NA)

VIO:  18 U.S.C. § 371

# INFORMATION

THE ACTING UNITED STATES ATTORNEY CHARGES:

## General Allegations

At all times relevant to this Information:

### The Medicare Program

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or over or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare was divided into four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4. Specifically, Medicare Part B covered the cost of physicians' services, medical equipment and supplies, and diagnostic laboratory services.

5. CMS contracted with regional contractors to process and pay Medicare claims. First Coast Service Options, Inc. ("First Coast") was the Medicare contractor that processed and paid claims involving Part B services, including diagnostic laboratory services, provided in Florida from at least May 2015 to at least May 2021.

6. SafeGuard Services, LLC ("Safeguard"), the Medicare Unified Program Integrity Contractor covering Florida from 2017 through 2021, was responsible for performing investigations and audits designed to protect Medicare from fraud, waste, and abuse.

7. Upon certification, health care providers, including clinics, physicians, and laboratories (collectively, "providers"), that provided services to Medicare beneficiaries were able to apply for a Medicare Provider Identification Number ("PIN") for billing purposes. In their enrollment application, providers were required

to disclose to Medicare any person or company who held an ownership interest of 5% or more or who had managing control of the provider. A provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that provider.

8.  A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and identification number of the physician or other provider who had ordered the services. When an individual provider was associated with a clinic and medically necessary services were provided at that clinic's location, Medicare Part B required that the provider numbers associated with the clinic be placed on the claim submitted to the Medicare contractor.

9.  By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims.

10. As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare was conditioned upon the claim and the underlying

transaction complying with these laws, regulations, and program instructions, including the Federal anti-kickback statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

11. Health care providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered.

12. To receive reimbursement for a covered service from Medicare, a provider must have submitted a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

## Medicare Urine Drug Testing

13. Under Medicare Part B, for a laboratory to properly bill and be paid by Medicare for laboratory testing, the beneficiary must, among other things, qualify for the testing under Medicare's established rules and regulations. The testing also must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim is submitted for reimbursement to Medicare.

14. For a laboratory to properly bill and be paid by Medicare for urine drug testing, the urine drug testing must have been both reasonable and medically necessary. For example, urine drug testing was medically necessary if the patient presented to a physician with a suspected drug overdose. Regular, routine, or

recreational drug screenings, however, were not reasonable or medically necessary. Further, the patient's medical record must have included documentation that fully supported the reasonableness of and medical necessity for the urine drug testing.

15. Definitive, or confirmation, urine drug testing was the most complex urine drug testing available that not only determined if a substance was present, but also the quantity of the substance present.

16. Under Medicare rules and regulations, to be appropriately reimbursable, definitive urine drug testing needed to be specific and individualized. Routine definitive urine drug testing, such as ordering the same comprehensive definitive urine drug testing panels for every patient in a physician's practice, was not medically necessary and not appropriately reimbursable.

17. The reimbursement rates paid by Medicare to laboratories for performing definitive urine drug testing were determined by the number of classes of drugs tested. The highest reimbursement rate (Code G0483) reimbursed for the testing of more than 22 classes of drugs.

18. Medicare would not reimburse claims, including claims for definitive drug testing, that were procured through the payment or receipt of kickbacks and bribes.

### The Physician Businesses

19. Company 1 was a Michigan company doing business in Farmington Hills, Michigan. Company 1 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

### The Laboratory

20. Laboratory 1 was a Florida limited liability company doing business in the Eastern District of Michigan. Laboratory 1 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

### Defendant and Other Individuals and Entities

21. Defendant **TEOFIL GHERASIM**, a resident of Oakland County, Michigan, was a minority owner of Laboratory 1 and performed marketing services on behalf of Laboratory 1.

22. R.M., a resident of Oakland County, Michigan, controlled, owned, or operated Company 1.

23. Company 2 was a Michigan limited liability company doing business in the Eastern District of Michigan. Company 2 was owned and operated by R.M.

### COUNT 1
### (18 U.S.C. § 371—Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks)

24. Paragraphs 1 through 23 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

25. Beginning in or around March 2018, and continuing through in or around March 2019, in the Eastern District of Michigan, and elsewhere, defendant **TEOFIL GHERASIM** did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with R.M. and others known and unknown to the Grand Jury to commit certain offenses against the United States, that is:

    a. to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare, in violation of Title 18, United States Code, Section 371; and

    b. to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person: (i) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and (ii) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under

a Federal health care program, that is, Medicare, in violation Title 42, United States Code, Section 1320a-7b(b)(2)(A) and (B).

## Purpose of the Conspiracy

26. It was a purpose of the conspiracy for **TEOFIL GHERASIM** and his co-conspirators to unlawfully enrich themselves by: (1) offering, paying, receiving, and soliciting, kickbacks and bribes to ensure that Medicare beneficiaries' urine samples were referred by Company 1 to Laboratory 1 for urine drug testing; (2) submitting or causing the submission of claims to Medicare for urine drug testing of urine samples referred to Laboratory 1 as a result of the payment of kickbacks and bribes, (3) diverting proceeds of the fraud for the personal use and benefit of the defendant and his co-conspirators.

## Manner and Means

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

27. R.M., **TEOFIL GHERASIM**, and others devised and participated in a scheme to pay and receive illegal kickbacks and bribes in exchange for urine samples and physician orders for urine drug testing to be sent to Laboratory 1 for the purpose of billing Medicare.

28. In or around March 2018, R.M., **TEOFIL GHERASIM**, and others negotiated, calculated, and agreed to facilitate and conceal the payment of kickbacks

and bribes from Laboratory 1 to Company 1 by routing kickback payments through Company 2, in exchange for urine samples and physician orders from Company 1 to be sent to Laboratory 1 for the purpose of submitting claims to Medicare.

29.     Between about March 2018 and March 2019, **TEOFIL GHERASIM** and others, on behalf of Laboratory 1, paid R.M., via Company 2, with checks drawn on a Laboratory 1 bank account, totaling approximately $129,600, for the purpose of soliciting urine samples and orders for urine drug testing signed by Company 1 physicians, without regard to medical need.

30.     Between about March 2018 and March 2019, **TEOFIL GHERASIM** and others, through Laboratory 1, submitted and caused the submission of false and fraudulent claims to Medicare for physician orders and urine drug testing services that were obtained through illegal kickbacks and bribes to R.M., resulting in Laboratory 1 being paid approximately $365,815 in Medicare reimbursements.

### Overt Acts

31.     In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in Wayne and Oakland Counties, in the Eastern District of Michigan, and elsewhere, at least one of the following overt acts, among others:

32.     On or about March 2018, **TEOFIL GHERASIM** and others, on behalf of Laboratory 1, met in-person with R.M. at the Company 1 office and agreed to pay

R.M., by and through Company 2, in exchange for urine samples and physician orders for comprehensive urine drug testing, to be obtained by R.M. from Company 1 physicians.

33. Between about March 2018 and March 2019, **TEOFIL GHERASIM** and others, on behalf of Laboratory 1, made twelve payments via check from a Laboratory 1 bank account to R.M., by and through Company 2.

34. Between about March 2018 and March 2019, **TEOFIL GHERASIM** and others, on behalf of Laboratory 1, facilitated the procurement of urine samples and physician orders for comprehensive urine drug testing from Company 1, and submitted claims for comprehensive urine drug testing to Medicare for reimbursement to Laboratory 1.

35. Between about March 2018 and March 2019, **TEOFIL GHERASIM** was paid approximately $100,000 by Laboratory 1.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)

36. The allegations contained in Count 1 of this Information is re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendant **TEOFIL GHERASIM** pursuant to Title 18, United States Code, Section 981, and Title 28, United States Code, Section 2461.

37. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, upon being convicted of the crime charged in Count 1 of this Information, the convicted defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

38. <u>Money Judgment</u>:  Property subject to forfeiture includes, but is not limited to a forfeiture money judgment in the amount of $100,000, representing the total amount of forfeitable proceeds as a result of defendant's violations as alleged in Count 1 of this Information.

39. <u>Substitute Assets</u>:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and/or Title 28, United States Code, Section 2461, to seek to forfeit any other property of **TEOFIL GHERASIM** up to the value of such property.

SAIMA S. MOHSIN
ACTING UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

ALLAN J. MEDINA
Chief, Health Care Fraud Unit
Criminal Division, Fraud Section
U.S. Department of Justice

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan


_____
SHANKAR RAMAMURTHY
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 924-5368
Email: shankar.ramamurthy@usdoj.gov

Dated: October 18, 2021

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>2:21-cr-20641 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes    ☒ No | **AUSA's Initials:** |

**Case Title:** USA v. Teofil Gherasim

**County where offense occurred:** Oakland County

**Check One:**    ☒ Felony    ☐ Misdemeanor    ☐ Petty

   ____ Indictment/ ✓ Information --- **no** prior complaint.
   ____ Indictment/____ Information --- based upon prior complaint [Case number:         ]
   ____ Indictment/____ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____     **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

October 18, 2021
Date

s/Shankar Ramamurthy
Shankar Ramamurthy
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (202) 924-5368
Fax:   (313) 226-0816
E-Mail address: shankar.ramamurthy@usdoj.gov
Attorney Bar #: IL Bar # 6306790

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.